UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TABERNA CAPITAL MANAGEMENT, LLC, | : District Court Case No.:<br>08 CV 1817 [JSR] |
| Plaintiff, | : |
| - against - | : |
| SIDNEY B. DUNMORE, MICHAEL A. KANE,<br>and DHI DEVELOPMENT f/k/a DUNMORE<br>HOMES, LLC, | : **ORAL ARGUMENT REQUESTED** |
| Defendants. | : |
|  | : |
|  | : |
|  | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SIDNEY B. DUNMORE'S
MOTION  (1) TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE
ALTERNATIVE, (2) TO DISMISS OR TRANSFER FOR IMPROPER VENUE, OR IN
THE ALTERNATIVE (3) TO TRANSFER VENUE FOR CONVENIENCE TO THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
CALIFORNIA, SACRAMENTO DIVISION**

## TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ........................................................................... 2

II.   FACTUAL BACKGROUND ............................................................................ .4

III.  THERE IS NO PERSONAL JURISDICTION OVER DEFENDANT DUNMORE IN
      NEW YORK ................................................................................................5

      A.    There Is No General Jurisdiction Over Dunmore ................................ 7

      B.    There Is No Specific Jurisdiction Over Dunmore ................................ 9

IV.   THE CASE SHOULD BE DISMISSED OR TRANSFERRED TO CALIFORNIA
      BECAUSE VENUE IN NEW YORK IS IMPROPER .................................... 14

V.    THE COMPLAINT SHOULD BE TRANSFERRED TO CALIFORNIA FOR THE
      CONVENIENCE OF DUNMORE AND THE WITNESSES ....................... 18

      A.    The Action Could Have Been Brought In The Transferee Court ....................... 19

      B.    Transfer To The District Court For The Eastern District of California,
            Sacramento Division Would Serve The Interests of Justice................................ 18

VI.   CONCLUSION........................................................................................... 23

# TABLE OF AUTHORITIES

CASES

*American Steamship Owners Mutual Protection and Indemnity Assoc, Inc. v. LaFarge*

 *North America, Inc.*, 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007)---------------------------- 20

*APA Excelsior III L.P. v. Premiere Technologies, Inc.*,

 49 F.Supp.2d 664, 668 (S.D.N.Y. 1999) --------------------------------------------------------- 22

*Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir.1997)---------------------------------- 11

*Cliffstar Corp. v. Cal. Foods Corp.*,

 254 A.D. 2d 760, 761 677 N.Y.S.2d. 864 (4th Dept. 1998)---------------------------------- 13

*In re Collins & Aikman Corp. Securities Litigation,*

 438 F. Supp.2d 392 (S.D.N.Y. 2006) ----------------------------------------------------------------- 22

*D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 107 (2d Cir. 2006)--------------------------------- 18, 19

*Estate of Ungar v. Palestinian Authority,* 451 F. Supp. 2d 607, 609 (S.D.N.Y. 2006)------------ 17

*Fantis Foods v. Standard Importing Co.*, 49 N.Y. 2d 317, 326-27 (1980)--------------------------- 13

*Filmline (Cross-Country) Prod., Inc. v. United Artists Corp.*,

 865 F.2d 513,520 (2d Cir. 1989) ----------------------------------------------------------------- 19

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,*

 415 F.Supp.2d 370, 376 (S.D.N.Y. 2006)--------------------------------------------------------- 22

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57, 59-60 (2d Cir. 1985)----------------- 6, 9

*International Shoe Co. v. Washington,*

 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ---------------------------------------- 6, 9

*Karvelis v. Constellation Lines S.A., 608 F. Supp. 966, 971 (S.D.N.Y. 1985), aff'd,*

 806 F.2d 49 (2d Cir. 1986), <u>cert. den.</u> 481 U.S. 1015 (1987) --------------------------------- 19

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,*

    918 F.2d 1039, 1043 (2d Cir. 1990) --------------------------------------------------------------- 7

*Longwood Resources Corp. v. C.M. Exploration Co., Inc.,*

    988 F. Supp. 750, 752 (S.D.N.Y. 1997) ----------------------------------------------------------- 12

*McGowan v. Smith,* 52 N.Y. 2d 268, 272 (1981) -------------------------------------------------------- 9

*Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ------------------------- 6, 9

*Mills v. Colgate-Palmolive Co.,* 232 F. Supp. 577, 579 (S.D.N.Y. 1964) ---------------------------- 18

*Newbro v. Freed,* 337 F. Supp. 2d 428, 431 (S.D.N.Y. 2004) --------------------------------------- 9, 10

*Nieves v. American Airlines,* 700 F. Supp. 769, 773 (S.D.N.Y. 1998) --------------------------------- 21

*Norwood v. Kirpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955) ---------------------------- 18

*Overseas Media, Inc. v. Skvortsov,* 407 F. Supp. 2d 563, 572, 575 (S.D.N.Y. 2006) ---- 11, 12, 14

*Parke-Bernet Galleries, Inc. v. Franklin,* 26 N.Y. 2d 13, 19 (Ct. App. 1970) ----------------------- 12

*Piper Aircraft Co. v. Reyno,*

    454 U.S. 235, 249-50, 102 S.Ct. 252, 262-63, 70 L.Ed. 2d 419 (1981) --------------------- 19

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*

    148 F.3d 1355, 1358, 1359 (Fed. Cir. 1998) -------------------------------------------------- 6, 7, 8

*Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir. 1994) ------------------------- 6

*Saferstein v. Paul, Mardinly, Durham, James, Falndreau & Roger, P.C.,*

    927 F. Supp. 731, 735 (S.D.N.Y. 1996) ----------------------------------------------------------- 14

*Storch v. Vigneau,* 162 A.D. 2d, 241, 242 (1st Dep't 1990) ---------------------------------------------- 13

*Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100 (S.D.N.Y. 2007) -------------------------------- 22

*Syed v. Housel,* 106 F. Supp. 2d 397, 400 (D. Conn. 2000) -------------------------------------------- 15

*Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed. 2d 945 (1964) ----------- 19

iii

*Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 113-15 (S.D.N.Y. 1993)----------- 12

*Wm. Passalacqua Builders v. Resnick Developers South, Inc.,*

    933 F.2d 131, 139 (2d Cir. 1991) ------------------------------------------------------------------ 8

*Zurich Insur. Co. v. Prime, Inc.,* 419 F. Supp. 2d 384 (S.D.N.Y. 2005)----------------------------- 15

## FEDERAL STATUTES

28 U.S.C. § 1404-------------------------------------------------------------------------------------------- 20

28 U.S.C. § 1404(a) ------------------------------------------------------------------------------------- passim

28 U.S.C. § 1406(a) ------------------------------------------------------------------------------------- passim

28 U.S.C. § 1391(a) ------------------------------------------------------------------------------- 15, 16, 19

## RULES

CPLR § 301-------------------------------------------------------------------------------------------------- 7

CPLR § 302------------------------------------------------------------------------------------------------ 13

CPLR § 302(a) ---------------------------------------------------------------------------------------9, 10, 13

CPLR § 302(a)(2)---------------------------------------------------------------------------------------- 11

CPLR § 302(a)(3)------------------------------------------------------------------------------------- 12, 14

CPLR § 302(a)(3)(i)------------------------------------------------------------------------------------ 12

CPLR § 302(a)(3)(ii) --------------------------------------------------------------------------------- 12

FRCP 4(k)(1)(A)---------------------------------------------------------------------------------------- 6

FRCP 12(b)(2) -------------------------------------------------------------------------------------- passim

FRCP 12(b)(3) -------------------------------------------------------------------------------------- passim

FRCP 45(e) -------------------------------------------------------------------------------------------- 17

Defendant Sidney B. Dunmore ("Defendant" or "Dunmore"), by his attorneys, hereby moves this Court pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rule of Civil Procedure ("FRCP"); and 28 U.S.C. § 1406(a) and § 1404(a): (1) to dismiss this action against Dunmore for lack of personal jurisdiction; or in the alternative (2) to dismiss or transfer this action to the United States District Court for the Eastern District of California, Sacramento Division (the "California Court") for improper venue; or in the alternative, (3) to transfer venue of this action to the California Court for the convenience of the parties (the "Motion").

In support of this Motion, Dunmore respectfully states as follows:

## I.

## SUMMARY OF ARGUMENT

The simple fact, supported by all of the evidence, makes clear that there is no basis for either personal jurisdiction or venue in the state of New York. While this Motion attacks only procedural defects, and does not address any of the substantive defects of the Complaint,[1] the fact remains that Plaintiff Taberna Capital Management, LLC ("Plaintiff") is trying to take advantage of the fact that Defendant DHI Development, formerly known as Dunmore Homes, LLC, 6a California corporation ("Dunmore CA"), sold 100% of its assets to Dunmore Homes, a New York corporation ("Dunmore NY"). However, this does not create a basis for jurisdiction in New York for at least three reasons: (1) Dunmore NY is not a party to this action; (2) Dunmore NY filed a bankruptcy case in the United States Bankruptcy Court, Southern District of New York, but any action against Dunmore NY is prohibited without obtaining relief from the automatic stay; and in any event, (3) on January 14, 2008, Judge Martin Glenn, United States

---

[1] Once the action is either dismissed or transferred, when appropriate, Dunmore intends to file a motion to dismiss for failure to state a claim upon which relief can be granted. Accordingly, all rights and defenses are reserved.

Bankruptcy Court Judge, entered an order granting the Motion to Transfer Venue of the bankruptcy case entitled In re Dunmore Homes, Inc. from the Southern District of New York to the Eastern District of California, Sacramento Division.[2]

Remarkably, three days after venue of the bankruptcy case was transferred to California, on January 17, 2008, Plaintiff filed this action in the Supreme Court of New York, seeking to recover against the California defendants for (1) breach of the contract; (2) tortious interference; (3) breach of fiduciary duty; (4) fraudulent conveyance; (5) alter ego; and (6) unjust enrichment (the "Complaint" or the "State Court Action"). Significantly, neither Dunmore nor Michael A. Kane ("Kane") are parties to the contract which is the subject of the first claim for relief; and Dunmore CA is not a party to the other five claims for relief against the two individuals. Defendants timely removed the State Court Action to this Court on or about February 22, 2008, because there is complete diversity between the parties herein and the amount in controversy exceeds $75,000. To date, Plaintiff has not objected to the removal.

The overwhelming deficiencies underscoring the propriety of dismissal or transfer of venue to California are at least fivefold: (1) none of the parties to this action, not even Plaintiff, are domiciled in, or created under, the laws of New York; (2) as a matter of law, there is no personal jurisdiction over Dunmore, a resident of California, or even the other two California defendants;[3] (3) the breach of contract claim is not alleged against Dunmore individually, nor is Dunmore a party to the contract, so the jurisdiction provision in the contract, albeit discretionary, is unenforceable as to Dunmore; (4) as a matter of law, venue in New York is improper as to

---

[2] See published Memorandum Opinion And Order Granting Motion For Transfer of Venue To The Eastern District of California, Sacramento Division, attached as Exhibit "A" to Request for Judicial Notice filed concurrently herewith ("RJN").

[3] See FRCP 12(b)(2).

3

Dunmore;[4] and finally, (5) *assuming arguendo* that Plaintiff could somehow overcome all of these critical impediments to proceeding in New York, the fact remains that venue is more proper and convenient to the parties and witnesses in Sacramento, California, where all of the witnesses and documents are located and all of the events allegedly occurred.

## II.

## FACTUAL BACKGROUND

Remarkably, none of the parties to this action are New York individuals or entities. Indeed, of the three defendants, two are individual residents of California and one is a California corporation;[5] while Plaintiff is a Delaware limited liability company.[6] When you put this all together, it is readily evident that there is no basis for either personal jurisdiction or venue in New York, and the case should be dismissed or at least transferred to California.

Dunmore is a resident of Granite Bay, California.[7] Kane is a resident of Gold River, California.[8] Moreover, DHI Development LLC, formerly known as Dunmore Homes, a California corporation, is also a California corporation with its principal place of business in Granite Bay, California.[9] Plaintiff Taberna Capital Management, LLC, is a Delaware LLC, which is a wholly owned subsidiary of RAIT Financial Trust, a publicly traded real estate

---

[4] See FRCP 12(b)(3) and 28 U.S.C. § 1406(a).

[5] See Notice to Federal Court of Removal of Civil Action From State Court ("Notice of Removal") attached as Exhibit "B" to RJN; see also Affirmation of Sidney B. Dunmore filed concurrently herewith in support of the Motion ("Dunmore Affir.") at ¶ 4; see also California Secretary of State Records of DHI Development attached as Exhibit "C" to RJN.

[6] See Delaware Secretary of State Records of Taberna Capital Management, LLC attached to the RJN as Exhibit "D".

[7] See Exhibit B to RJN at 3; see also Dunmore Affir. at ¶4.

[8] See Exhibit B to RJN at 3; see also Dunmore Affir. at ¶5.

4

investment trust incorporated in the State of Maryland, with its principal place of business in Philadelphia, Pennsylvania.[10] Accordingly, there is absolutely no connection to New York.

Beyond the defendants' California residency, additional relevant facts are that: Dunmore (a) does not conduct systematic and continuous local activity in New York; (b) is not a party to the contract sued upon in the Complaint; (c) has not purposefully directed his business or personal activities in New York; (d) did not transact any business in New York; (e) has only visited New York once, for a one hour delay while waiting to re-fuel his flight on a trip from Europe home to Sacramento; and (f) did not contract anywhere to supply goods or services in New York.[11] Indeed, the claims alleged against Dunmore, including the alleged tortuous acts committed, do not arise out of or relate to any activities directed at residents of New York. Further, the contract at issue was executed in California. [12] As such, Plaintiff's assertion of personal jurisdiction as to Dunmore (or for that matter as to any of the other two California defendants) is neither reasonable nor fair.

### III.

### THERE IS NO PERSONAL JURISDICTION

### OVER DEFENDANT DUNMORE IN NEW YORK

Essentially, Plaintiff filed a Complaint in New York against Dunmore based "upon information and belief," which is a rather tenuous basis upon which to invoke personal jurisdiction in New York. Indeed, on information and belief, Plaintiff alleges that Dunmore "is

---

[9] See Exhibit B to RJN at 2; see also Exhibit C to RJN.

[10] See Exhibit "B" to RJN at 3.

[11] see Dunmore Affir. at ¶¶7 and 9.

[12] See Dunmore Affir. at ¶9.

an individual who transacted business in the State of New York in connection with the causes of action herein and committed a tort within the State of New York . . .."[13]  No further allegations are set forth in the Complaint, and the evidence submitted herewith is absolutely to the contrary.

As a matter of law, Plaintiff carries the burden of proof in establishing personal jurisdiction over a defendant.  See Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).  This requires that a plaintiff show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).  As outlined herein, Plaintiff simply cannot meet its burden of proof.

Determining whether there is personal jurisdiction over a non-consenting defendant outside the boundaries of the forum is a two-step inquiry.  **First**, the district court must determine whether a provision makes the defendant amenable to process, which usually depends on whether the defendant could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located.  See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998) (*citing* to FRCP 4(k)(1)(A)).  **Second**, the district court must ensure that maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice that are embodied in the Due Process Clause.  Id., *citing* to International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting* Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

Here, Plaintiff fails on both prongs because (a) Plaintiff is unable to show sufficient minimum contacts between Dunmore (a California resident) and New York to establish either general jurisdiction or specific jurisdiction over Dunmore; and (b) proceeding with the action in

---

[13] See Complaint p. 2 ¶3.

6

New York would clearly offend traditional notions of fair play and substantial justice. Accordingly, the Complaint against Dunmore should be dismissed pursuant to FRCP 12(b)(2).

### A.    There Is No General Jurisdiction Over Dunmore

In order to establish "minimum contacts" to support a finding of personal jurisdiction over a party in New York there can be a finding of either general jurisdiction or specific jurisdiction. However, here, neither general nor specific jurisdiction over Dunmore exists.

For general jurisdiction to exist, as set forth in the New York Civil Practice Law & Rules ("CPLR") § 301, a plaintiff must show that the defendant is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its "presence" in this jurisdiction. See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). This standard requires that a defendant be present in New York, "not occasionally or casually, but with a fair measure of permanence and continuity." Id. The test is fact-sensitive and pragmatic and to reach a determination about whether a defendant is "doing business" in New York, courts focus on "the existence of an office in New York, the solicitation of business in New York, the presence of bank accounts or other property in New York and the presence of employees or agents in New York. Id. Importantly, random, fortuitous or attenuated contacts do not count in the minimum contacts calculus. See Red Wing Shoe Co., 148 F.3d at 1359.

Clearly, none of the above-factors as to Dunmore are present here; indeed, none are even alleged in the Complaint and all are disavowed by Dunmore in his affirmation. Specifically, the Dunmore Affirmation provides evidence that Dunmore lives and works in California;[14]

---

[14] See Dunmore Affir. at ¶¶4 and 6.

7

Dunmore did not engage in any continuous or systematic business in New York;[15] Dunmore was never present in New York with a fair measure of permanence and continuity;[16] Dunmore never maintained an office in New York, and never solicited business in New York; nor did Dunmore employ employees or agents in New York.[17] Further, Dunmore has no bank accounts in New York or real property in New York.[18]

Indeed, a one hour lay-over in New York while re-fueling an airplane, or even a one-time sale of assets of Dunmore CA to Dunmore NY, does not rise to the level of nexus required for a finding of sufficient minimum contacts for general jurisdiction. Clearly, such a "random, fortuitous, or attenuated" contact with New York by Dunmore, standing alone, is insufficient to establish minimum contacts necessary for general personal jurisdiction over Dunmore.[19]

---

[15] Id. at 7.

[16] Id. Indeed, a one hour layover to re-fuel is woefully inadequate.

[17] Id. at 6 – 7.

[18] Id. at 7.

[19] See Red Wing Shoe Co., 148 F.3d at 1359. Although Plaintiff contends that Dunmore is an alter ego of Dunmore CA, Plaintiff failed to sufficiently allege a *prima facie* case for piercing the corporate veil and holding Dunmore bound by Dunmore CA's potential consent to jurisdiction in New York (if any). Some of the main factors taken into consideration in determining whether to pierce the corporate veil under an alter ego theory include:

> "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel and (5) common office space, address and telephone numbers of corporate entities. . . . "

See, e.g., Wm. Passalacqua Builders v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991).

Plaintiff's bald statements in the Complaint merely constitute legal conclusions and do not address any of the above factors or evidence "fraud," let alone sufficiently to meet the high

## B.    There Is No Specific Jurisdiction Over Dunmore

As an alternative to general jurisdiction for minimum contacts, in order to establish

specific jurisdiction, CPLR § 302(a) requires that a plaintiff illustrate that the defendant:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state.

Moreover, the exercise of jurisdiction over Dunmore would be improper unless doing so satisfies

due process requirements.  See International Shoe Co., 326 U.S. at 316.  Due process requires

that a defendant have enough minimum contacts with the forum state so that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice.  Id.  Due process is

satisfied if the defendant "purposefully and sufficiently availed [itself] of the privileges of

conducting business" in New York, so that it would be reasonable to anticipate being subject to

suit in New York.  See Newbro v. Freed, 337 F. Supp. 2d 428, 431 (S.D.N.Y. 2004).  Clearly this

is not the case here, and no facts are alleged which would even support such a finding.

Without question, none of these typical factors assessed are present as to Dunmore, and

Plaintiff has not even alleged anything close.  Essential to the maintenance of a suit against a

nondomicillary under CPLR § 302(a), is the existence of some articulable nexus between the

business transacted and the cause of action sued upon.  See McGowan v. Smith, 52 N.Y. 2d 268,

272 (1981); see also Hoffritz, 763 F.2d at 59-60 (requiring a "substantial nexus" between the

_____

hurdle of establishing a *prima facie* alter ego action to bind Dunmore with Dunmore CA's

business and cause of action). Merely transacting business in New York is not enough to create jurisdiction in New York. See Newbro, 337 F. Supp. 2d at 431. Simply put, the sale of Dunmore CA to Dunmore NY is not an act sufficient to compel jurisdiction in New York.

Indeed, application of these fundamental considerations outlined in CPLR § 302(a) confirms that there is no basis for specific jurisdiction over Dunmore. **First,** Dunmore does not transact business within New York, does not maintain bank accounts in New York nor does Dunmore contract in New York.[20] **Second**, Dunmore has no direct connection to New York whether personally or business related.[21] Certainly the sale of the assets of Dunmore CA to Dunmore NY falls short of the requisite nexus to New York, or a basis to allege that Dunmore conducts business in New York. Remarkably, Plaintiff does not even name Dunmore NY in this action, effectively eliminating the only potential New York party. **Third,** the Bankruptcy Court has already issued an Order which provides, *inter alia*, that the formation of a New York corporation, which has its principal place of business in California, as well as its employees, officers and directors in California, is insufficient to maintain a bankruptcy case in New York.[22]

In addition to the foregoing factors, the Dunmore Affirmation establishes that Dunmore did not contract in New York to supply goods or services, nor did Dunmore commit any tort in New York that caused injury to any New York person or property.[23] In the Complaint, Plaintiff alleges that Dunmore committed four types of torts (a) tortious interference; (b) breach of fiduciary duty; (c) fraudulent conveyance; and (d) alter ego. The sum of Plaintiff's allegations

---

alleged potential consent to jurisdiction.

[20] See Dunmore Affir. at ¶7.

[21] Id.

[22]See Exhibit "A" to RJN.

10

made in support of these so-called torts is that Dunmore formed a New York corporation to which he caused Dunmore CA to transfer all of its assets in violation of the Indenture and that said transfer caused Plaintiff damages. However, there are no facts provided in support of these allegations in the Complaint only legal conclusions.

Simply put, Plaintiff cannot overcome the Second Circuit's long-standing rule that jurisdiction under CPLR § 302(a)(2) will not be found where the plaintiff fails to allege that a defendant or his agents committed a tortious act while **physically present** in New York as required for exercise of personal jurisdiction under CPLR § 302(a)(2). See Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 572 (S.D.N.Y. 2006); see also Bensusan Restaurant Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997) (In a suit involving the creation of a website that allegedly infringed on plaintiff's mark, where all of the acts giving rise to the plaintiff's suit were performed by persons physically present in Missouri and not in New York, the Second Circuit ruled that in order to subject non-residents to New York jurisdiction under 302(a)(2) the defendant must commit the tort while he or she is physically in New York State). Nowhere in the Complaint does Plaintiff allege that Dunmore was physically present in New York when the so-called torts were committed. In fact, the closest the Complaint comes to making any type of connection between Dunmore and New York is based on "information and belief" that Dunmore transacted business in New York in connection with the causes of action alleged in the Complaint.[24] However, the Second Circuit makes it abundantly clear that such allegations cannot bind Dunmore to jurisdiction in New York because it is not alleged that Dunmore was physically in New York when he purportedly committed these torts, and in fact, Dunmore was

---

[23] See Dunmore Affir. at ¶7.

[24] See Complaint at 2, ¶3.

11

never in New York except once for a one-hour period of time in between flights.[25]  Therefore, Plaintiff fails this prong as well.

Finally, Plaintiff may assert that although Dunmore was not present in New York during the alleged commission of the torts, the alleged torts caused injury to New York persons or property as per CPLR § 302(a)(3).  To meet the requirements of CPLR § 302(a)(3)(ii), Plaintiff must show that defendant did all of the following: (i) commit a tortious act outside the state of New York; (ii) the causes of action must arise from that act; (iii) the act must have caused injury to a person or property within New York; (iv) the defendant must have expected or should reasonably have expected the act to have consequences in the state of New York; and (v) the defendant must have derived substantial revenue from interstate or international commerce. See Overseas Media, Inc., 407 F. Supp. 2d at 575 (citations omitted).  Further, in order to make a showing of jurisdiction under CPLR § 302(a)(3)(i), the Plaintiff must establish the first three elements, and a demonstration that the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state of New York.  Id.[26]  Under CPLR § 302(a)(3), each

---

[25] See Dunmore Affir. at ¶7.

[26]Moreover, a sale to a New York entity, alone, is an insufficient business transaction for purposes of personal jurisdiction in New York courts.  For example, merely communicating and negotiating with a buyer in New York is insufficient to demonstrate that a defendant transacted business in New York.  Longwood Resources Corp. v. C.M. Exploration Co., Inc., 988 F. Supp. 750, 752 (S.D.N.Y. 1997).  Cases require a defendant to project himself into this jurisdiction, such as a buyer who participated by phone at a live auction in New York in such a way that he "'purposefully' availed himself 'of the privilege of conducting activities' within New York." Parke-Bernet Galleries, Inc. v. Franklin, 26 N.Y. 2d 13, 19 (Ct. App. 1970).  Similarly, a court had personal jurisdiction over a defendant who attended business meetings in New York and a social dinner there during which business was discussed for approximately 10 to 15 minutes. Wilhelmshaven Acquisition Corp. v. Asher, 810 F. Supp. 108, 113-15 (S.D.N.Y. 1993).  There is no evidence that Dunmore projected himself into events taking place in New York or attended meetings there.

12

element is essential and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision. Id. (citations omitted).

In an effort to establish the out-of-state torts, Plaintiff points to the formation of a New York corporation to which assets were transferred from a California corporation, somehow causing financial injury to Plaintiff and that Dunmore transacted business in New York in connection with these torts. However, the financial injury, if any, resulting from the alleged torts still did not occur in New York. New York case law is clear, "an injury does not occur in New York within the meaning of CPLR § 302(a) merely because a plaintiff is domiciled in New York [which is not even the case here] and suffers a loss of income there." See Storch v. Vigneau, 162 A.D. 2d, 241, 242 (1st Dep't 1990). Even if injury would have occurred in New York, the putative monetary loss alleged as a result of Dunmore's conduct is not, as a matter of law, a sufficient predicate for jurisdiction under CPLR § 302. See Fantis Foods v. Standard Importing Co., 49 N.Y. 2d 317, 326-27 (1980); Cliffstar Corp. v. Cal. Foods Corp., 254 A.D. 2d 760, 761, 677 N.Y.S. 2d 864 (4th Dept. 1998).

In addition to the foregoing, Plaintiff does not allege in the Complaint that Dunmore must have expected or should reasonably have expected the act to have consequences in the State of New York. Moreover, the Complaint does not provide any facts in support of the mere conclusory allegation that Defendant transacted business in the State of New York. In fact, Dunmore does not regularly do business in New York nor does he solicit business in New York or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in the state of New York.[27] Finally, the sale of the assets

---

[27] See Dunmore Affir. at ¶7.

from Dunmore CA to Dunmore NY was for $500.00.[28]    That can hardly be considered "substantial revenue" under any stretch of the imagination.[29]    Therefore, even if Plaintiff is successful in illustrating some of the prongs of CPLR § 302(a)(3) – which Dunmore denies – it cannot possibly prove each element of this section which is fatal to establishing personal jurisdiction.  See Overseas Media, Inc., 407 F. Supp. 2d at 575.

**IV.**

## THE CASE SHOULD BE DISMISSED OR TRANSFERRED TO CALIFORNIA BECAUSE VENUE IN NEW YORK IS IMPROPER

As a threshold matter, a court can first decide the issue of personal jurisdiction and then proceed to consider the issue of venue, if the Court finds that it has personal jurisdiction over the defendant.  See Saferstein v. Paul, Mardinly, Durham, James, Falndreau & Roger, P.C., 927 F. Supp. 731, 735 (S.D.N.Y. 1996) (citations omitted).  However, the Supreme Court has suggested that personal jurisdiction is not fundamentally preliminary in the same way that subject matter jurisdiction is, and a court may consider venue first, before it considers the issue of personal jurisdiction where there are sound reasons for doing so.  Id.  Although Dunmore has argued extensively in Section III herein that there is no personal jurisdiction in New York over Dunmore, and that for this reason alone the case should be dismissed as to him, as a secondary matter, Dunmore also believes that venue in New York is improper and also requires dismissal of the case, or alternatively, at least transfer to California.

Venue serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a court that is either remote from the defendant's residence or from the place

---

[28] Id. at ¶8.

where the acts underlying the controversy occurred. Id. Once a challenge properly has been made as to venue, it becomes the plaintiff's burden of proof to show that venue is proper in the chosen court. See Syed v. Housel, 106 F. Supp. 2d 397, 400 (D. Conn. 2000). Here, Dunmore contends that Plaintiff cannot meet its burden of proof and that the case should be dismissed for improper venue.

FRCP 12(b)(3) provides for the dismissal of an action based on improper venue. See FRCP 12(b)(3); see also Zurich Insur. Co. v. Prime, Inc., 419 F. Supp. 2d 384 (S.D.N.Y. 2005) (dismissing third-party complaint pursuant to FRCP 12(b)(3) on the ground of improper venue based on a forum selection clause). Additionally, pursuant to 28 U.S.C. §1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

To determine if venue is proper, 28 U.S.C. §1391(a) provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. See 28 U.S.C. §1391(a).

---

[29] Indeed, Dunmore is by trade and profession a real estate developer in California. Id. at ¶¶6 and 7.

15

Based upon a plain reading of Section 1391(a), it is readily evident that venue is not proper in New York. Indeed, none of the Defendants reside in New York and all of the Defendants reside in California. Further, although a Plaintiff's residence is not even considered in determining venue, it bears repeating that not even Plaintiff is a resident of New York. So, Plaintiff fails to meet this prong, even under the most lenient of guidelines.

The second prong of Section 1391(a) looks to where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." Here, the tortious claims alleged against Dunmore involve acts that allegedly occurred in California, not New York. In fact, the contract which is the essence of the Complaint was negotiated and executed in California.[30] Further, the Complaint does not involve any cause of action pertaining to any New York real property, and there is no personal property that is the subject of the action situated in New York for purposes of this analysis. Moreover, the alleged events or omissions, if any, emanated from California where Dunmore (and the other defendants) reside and conduct their business, and not New York. Plaintiff cannot refute any of this.

Additionally, in assessing the interest of justice requirement of Section 1406(a), and whether there are grounds to transfer a case initiated in an improper forum, the court may consider, *inter alia*, "(1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof and the locus of operative facts; and (4) the cost of obtaining willing witnesses."[31] Here, application of all of these factors to the facts of record confirms that Sacramento, California is the proper venue for this action. Although the better

---

[30] See Dunmore Affir. at ¶9.

[31] See Syed, 106 F. Supp. 2d at 400.

16

result is to dismiss the case, at a minimum, there is a basis to transfer venue to Sacramento, California, in lieu of dismissal.

First, Dunmore and the other defendants are residents of California. Thus, venue in New York is statutorily improper. Certainly it would be burdensome and oppressive to require Dunmore (along with the other two California defendants) to litigate an action in New York, where none of them reside, where none of the witnesses reside, and where none of the documents relative to the subject transactions are maintained. This truism directly ties into the issue of the convenience of witnesses, all of whom are located in California as well. However, in addition to the convenience of the witnesses, the court must also consider the effect of a transfer on the availability of witnesses, particularly where witnesses who do not live within the judicial district or within 100 miles of the place of trial may not be compelled by subpoena to attend. See Estate of Ungar v. Palestinian Authority, 451 F. Supp. 2d 607, 609 (S.D.N.Y. 2006); and FRCP 45(e). Third, it seems axiomatic that if all of the defendants reside in California and Dunmore CA's offices are located in Sacramento, California, that the witnesses and bulky documents are all housed in California as well, and that the "relative ease of access to sources of proof and the locus of operative facts" are similarly in Sacramento, California, and not New York. Finally, although deposition testimony can be used for witnesses who are beyond 100 miles of the place of trial, the fact remains that if this case is going to be tried before a jury in New York, Dunmore (as well as the other defendants) will most likely want to have as many witnesses in the courtroom as possible, which will naturally be hampered by the excessive costs associated with having witnesses travel from California to New York for a trial of at least five days' duration, which will require substantial coordination and costs for travel and lodging. Therefore, venue in

17

New York is improper and this case should either be dismissed for improper venue or transferred
to the California Court.

**V.**

## THE COMPLAINT SHOULD BE TRANSFERRED TO CALIFORNIA
## FOR THE CONVENIENCE OF DUNMORE AND THE WITNESSES

Even if this Court finds that jurisdiction and venue over Dunmore in New York is proper,
this Court can and should transfer this case to the California Court based on the convenience of
the parties and witnesses. Indeed, pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of
parties and witnesses, in the interest of justice, a district court may transfer any civil action to any
other district or division where it might have been brought."

Specifically, to transfer an action pursuant to 28 U.S.C § 1404(a), the Court must find
that: (a) the action could have been brought in the transferee district court, and (b) a transfer
serves the interest of justice and the convenience of the witnesses and parties. See D.H. Blair &
Co. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006); see also 28 U.S.C. §1404(a).   The provisions of
28 U.S.C. § 1404(a) permit district courts to exercise broader discretion in transferring a case und
this statute than would be permitted under common law forum non conveniens doctrine. See
Norwood v. Kirpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).  Courts are permitted to
adjudicate motions for transfer venue according to an individualized, case-by-case consideration
of convenience and interest of justice.  See Mills v. Colgate-Palmolive Co., 232 F. Supp. 577,
579 (S.D.N.Y. 1964).

### A.    The Action Could Have Been Brought In The Transferee Court

There is no question that this action could have been brought in the United States District
Court for the Eastern District of California because all of the defendants reside in Sacramento,

18

California, and the alleged events or omissions giving rise to the causes of action set forth in the Complaint occurred in Sacramento, California. See 28 U.S.C. § 1391(a)(1)&(2).

## B.    Transfer To The District Court For The Eastern District Of California, Sacramento Division Would Serve The Interests of Justice

In determining whether transfer is warranted for the convenience of the parties and witnesses and in the interest of justice under § 1404(a), courts consider several factors which include: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant bulky documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties. See D.H. Blair & Co., 462 F.3d at 107 (citations omitted). The entire purpose of a transfer is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. See Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (citations omitted). Further, the analysis of transfer under § 1404(a) is flexible and must be made on the unique facts of each case. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50, 102 S.Ct. 252, 262-63, 70 L.Ed.2d 419 (1981). Such determination rests within the sound exercise of the district court's discretion. See Filmline (Cross-Country) Prod., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989). Plaintiff fails on all of the factors above.

**First**, there is a strong presumption in favor of a plaintiff's choice of forum unless private and public interest considerations clearly point to trial in an alternate forum. See Karvelis v. Constellation Lines S.A., 608 F. Supp. 966, 971 (S.D.N.Y. 1985), aff'd, 806 F.2d 49 (2d Cir. 1986), cert. den. 481 U.S. 1015 (1987). Plaintiff brought this action in New York solely because

19

a New York company purchased the assets of a California company for $500. Importantly, the Complaint names the seller, the California company, but not the New York buyer. But for the sale of assets to a New York debtor, this case has absolutely no connection to New York. Therefore, New York has no interest in resolving this dispute. Indeed, no residents of or corporations formed under the laws of New York are parties to this action. Conversely, California has a significant interest and most likely will have to interpret California law in resolving this dispute. Therefore, there are clearly private and public considerations for removing this case to the California Court despite Plaintiff's choice of forum.

**Second,** there is no question that the convenience of the witnesses, parties and location of the documents weighs in favor of transferring this case to the California Court. Dunmore resides and works in California, as do the other two defendants. Dunmore does not maintain any offices, employees or professionals outside of California nor does he maintain any files, documents and bank accounts in New York.[32]   Therefore, the location of any prospective witnesses and documents are all in California, and most if not all are in Sacramento.[33]  Therefore, if forced to litigate this case in New York, Dunmore will be forced to incur significant expense for document production, witness, party and counsel travel that can be easily avoided by transferring this case to the California Court. Importantly, courts have found the convenience of witnesses to be the most important factor in a motion to transfer under Section 1404. See American Steamship Owners Mutual Protection and Indemnity Assoc, Inc. v. LaFarge North America, Inc., 474 F. Supp. 2nd 474, 482 (S.D.N.Y. 2007).

---

[32] See Dunmore Affir. at ¶7.

[33] Id. at ¶10.

20

**Third**, all of the relevant facts pertaining to this case are all in Sacramento California as discussed above. The Court must consider the effect of a transfer on the availability of witnesses particularly where witnesses who do not live within the judicial district or within 100 miles of the place of trial may not be compelled by subpoena to attend. Although deposition testimony can be used for witnesses who are beyond 100 miles of the place of trial, the fact remains that if this case is going to be tried before a jury in New York, Dunmore's (as well as the other California defendants') ability to bring witnesses to trial will naturally be hampered by the excessive costs associated with having witnesses travel from California to New York. Finally, the burden and expense mentioned above will hinder Dunmore's ability to properly defend himself in this action.

**Fourth**, it is abundantly clear that transferring this case to the California Court comports with the interest of justice and will promote the efficient administration of this case and judicial economy. To hold otherwise will, in essence, condone Plaintiff's blatant forum shopping in selecting this venue.

**Fifth**, it is well known that the presence of related litigation in the transferred forum weighs heavily in favor of transfer. See Nieves v. American Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1998) ("Transfer is particularly appropriate where there is a pending lawsuit in the transferee district involving the same facts, transactions, or occurrences"). As set forth above, Dunmore NY initially filed its chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of New York, which case has been transferred to the United States Bankruptcy Court for the Eastern District of California on or about January 14, 2008.[34] The Dunmore NY bankruptcy case is directly related to this lawsuit because it involves some, if not all, of the same parties, certain shared facts and documents, as well as witnesses. The obvious

---

[34] See Exhibit A to RJN.

question is why Plaintiff did not seek relief from the automatic stay and file this action as an adversary proceeding in Dunmore NY's bankruptcy case and name Dunmore NY as a party to that action. Certainly, a buyer is a necessary party to a fraudulent conveyance action. Yet the buyer was not even named in this action.

To have an action take place in two separate venues would be highly inefficient and wasteful. "Litigating related claims in the same tribunal allows for more efficient pretrial discovery, avoids [duplicative] litigation, prevents inconsistent results, and saves time [ ] and expense for both parties and witnesses." Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006); see also APA Excelsior III L.P. v. Premiere Technologies, Inc., 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999).

New York case law has shown the Court's tendency to transfer venue of cases similar to the case herein. By way of illustration, in In re Collins & Aikman Corp. Securities Litigation, 438 F. Supp. 2d 392 (S.D.N.Y. 2006), investors brought a securities fraud class action suit against a corporation, its officers and directors. Defendants moved for transfer to the Eastern District of Michigan. The Court held that the balance of the relevant factors favored transfer from New York to another district. Id. The grounds for the transfer, in relevant part, were that the witnesses were located in Michigan beyond subpoena range of New York court, many important defendant officers of corporation were in Michigan, most facts emanated from Michigan, most relevant documents were in Michigan, and two related suits were already underway in Michigan. Id. at 395-99. Also, in Strougo v. Brantley Capital Corp., 243 F.R.D. 100 (S.D.N.Y. 2007), the court granted defendants' motion to change venue from New York to Ohio for the convenience of the parties and the witnesses and in the interest of justice because, like in our case, the majority of the witnesses, availability of process to compel attendance of

22

unwilling witnesses, locus of operative facts, convenience of witnesses, trial efficiency and interests of justice supported transfer to Ohio.

## VI.

## CONCLUSION

In light of the foregoing, Dunmore respectfully requests that the Court grant his Motion and

(1)     Dismiss the Complaint filed by Plaintiff for lack of personal jurisdiction over Defendant Dunmore, pursuant to FRCP 12(b)(2); or in the alternative,

(2)     Dismiss the Complaint filed by Plaintiff for improper venue, pursuant to FRCP 12(b)(3) and 28 U.S.C. §1406(a), or in the alternative to transfer venue to Sacramento, California; or in the alternative,

(3)     Transfer venue of the action to Sacramento, California for the convenience of Defendant Dunmore and the witnesses pursuant to 28 U.S.C. §1404(a); or

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23

(4)    For such other relief as the Court deems appropriate.


Respectfully submitted,

Dated: March 10, 2008          LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.


By: _____ /s/ David L. Neale _____
            David L. Neale (DN 1948/CA State Bar No. 141225)
            Beth Ann R. Young (CA State Bar No. 143945) (Pro Hac Pending)
            Michelle Sharoni Grimberg (CA State Bar No. 217327) (Pro Hac Pending)

            10250 Constellation Boulevard, Suite 1700
            Los Angeles, California  90067
            Telephone:    (310) 229-1234
            Facsimile:    (310) 229-1244

            Attorneys for Defendant Sidney B. Dunmore

24