UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-----------------------------------------------------------------x

TABERNA CAPITAL MANAGEMENT, LLC,          :

                  Plaintiff,          :          08 Civ. 1817 (JSR)

         - against -          :

SIDNEY B. DUNMORE, MICHAEL A. KANE,          :
and DHI DEVELOPMENT f/k/a DUNMORE
HOMES, LLC,          :

             Defendants.          :

-----------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER

**WOLFBLOCK LLP**
**250 Park Avenue**
**New York, New York 10177**
**(212) 986-1116**

**Attorneys for Plaintiff**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. i

ARGUMENT ................................................................................................................... 4

I.      DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL
JURISDICTION SHOULD BE DENIED .......................................................... 4

      A.     Burden of Proof ................................................................................ 4

      B.     Sidney Dunmore and Kane Concocted and Effectuated the Scheme to Form a
Fraudulent Transferee in New York and Transfer $250,000,000 to the New
York Corporation ............................................................................ 5

      C.     All Claims Arise out of Defendants' Transaction of Business in New York ......... 7

      D.     As Sidney Dunmore's Alter Ego, DHI Bound Him to New York Jurisdiction ....... 9

II.     DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE SHOULD
BE DENIED ...................................................................................................... 11

III.    TRANSFER IS NOT WARRANTED ............................................................... 12

      A.     Taberna's Choice of Forum Should Be Honored ................................... 12

      B.     The Convenience of the Witnesses Favors New York .......................... 13

      C.     The Convenience of Parties Favors New York .................................... 14

      D.     The Location of Documents Does Not Favor Transfer .......................... 14

      E.     The Locus of Operative Facts Favors New York .................................. 15

      F.     The Availability of Compulsory Process Does Not Favor Transfer ............ 16

      G.     The Interests of Justice Favor New York ........................................... 16

      H.     Alleged Related Litigation in California Does Not Favor Transfer ............ 16

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n. v. Lafarge North Am., Inc.,*
   474 F.Supp.2d 474, 484 (S.D.N.Y.2007).................................................................15

*Beatie & Osborne LLP v. Patriot Scientific Corp.,*
   431 F.Supp.2d 367, 394 (S.D.N.Y. 2006)......................................................... passim

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462, 476 (1985)...........................................................................................7

*Coker v. Bank of America,*
   984 F.Supp. 757, 766 (S.D.N.Y. 1977).....................................................................15

*CutCo Indus., Inc. v. Naughton,*
   806 F.2d 361, 365 (2d Cir. 1986)..........................................................................7, 8

*Dealtime.com v. McNulty,*
   123 F.Supp.2d 750, 757 (S.D.N.Y. 2000)................................................................16

*Druck Corp. v. Macro Fund,*
   102 Fed. Appx. 192, 2004 WL 1367926 (2d Cir. June 17, 2004) ........................4, 5

*Dwyer v. Gen. Motors Corp.,*
   853 F.Supp. 690, 693 (S.D.N.Y. 1994).....................................................................14

*Factors, Etc., Inc. v. Pro Arts, Inc.,*
   579 F.2d 215, 218 (2d Cir. 1978).......................................................................12, 14

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*
   763 F.2d 55, 58 (2d Cir. 1985)..................................................................................7

*In re Dunmore Homes, Inc.,*
   Case No. 07-13533 (MG) ...........................................................................................2

*Karvelis v. Constellation Lines S.A.,*
   608 F.Supp. 966, 971 (S.D.N.Y. 1985).....................................................................13

*Orix Credit Alliance v. Brown,*
   No. 93 Civ. 1019, 1994 WL 392240....................................................................13, 14

*Packer v. TDI Systems, Inc.,*
   959 F.Supp. 192, 202-03 (S.D.N.Y. 1997) ...............................................................10

*Palace Exploration Co. v. Petroleum Development Co.,*
   41 F.Supp.2d 427, 437 (S.D.N.Y. 1998)...................................................................12

*Pall Corp. v. PTI Technologies, Inc.*,
   992 F.Supp. 196, 202 (E.D.N.Y. 1998) ...................................................................17

*Polizzi v. Cowles Magazines, Inc.*,
   345 U.S. 663, 665-66 (1953) ...................................................................................11

*PowerDsine, Inc. v. Broadcom Corp.*,
   07-CV-2490, 2008 WL 268808 ................................................................................13

*PT United Can Co. v. Crown Cork & Seal Co.*,
   138 F.3d 65, 72 (2d Cir. 1998)................................................................................11

*S-Fer Intern., Inc. v. Paladion Partners, Ltd.*,
   906 F.Supp.2d 211, 215 (S.D.N.Y. 1995)................................................................14

*U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.*,
   No. 98 Civ. 3099, 1999 WL 307642, at *12 (S.D.N.Y. May 17, 1999)....................10

*Viacom Int'l, Inc. v. Melvin Simon Prods.*,
   774 F. Supp. 858, 862 (S.D.N.Y. 1991).....................................................................7

*Wechsler v. Macke Int'l Trade, Inc.*,
   No. 99 Civ. 5725, 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999)....................14

*Weiss v. Columbia Pictures Television, Inc.*,
   801 F.Supp. 1276, 1278 (S.D.N.Y. 1992)................................................................13

*William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
   933 F.2d 131, 139 (2d Cir. 1991)............................................................................10

## STATUTES

28 U.S.C. § 1391 ...............................................................................................1, 11

28 U.S.C. § 1441(a) ..........................................................................................1, 11

CPLR 302(a)(1) .......................................................................................................7

**<u>Preliminary Statement</u>**

Plaintiff Taberna Capital Management, LLC ("Taberna") respectfully submits this memorandum of law in opposition to defendants Sidney B. Dunmore's ("Sidney Dunmore") and Michael A. Kane's ("Kane") motions to (1) dismiss the action for lack of personal jurisdiction, (2) dismiss this action for improper venue, and (3) transfer this action to their home forum—the Eastern District of California. The Court should deny each of these motions.

Both Sidney Dunmore and Kane are subject to personal jurisdiction in this Court because the claims against them in this action all arise out of their fraudulent scheme to form a New York corporation, transfer $250 million to the New York corporation, and use the bankruptcy court located in New York to protect their transaction. In addition, Sidney Kane's alter ego, defendant DHI Development f/k/a Dunmore Homes, LLC ("DHI"), agreed in the underlying Indenture to the jurisdiction of this Court—and DHI, by defaulting in this action, has admitted the allegations in the complaint that Sidney Dunmore and DHI are alter egos.

Defendants' motions to dismiss for improper venue fail to recognize the proper statute governing venue in cases removed to federal court. Although venue in diversity cases is generally governed by 28 U.S.C. 1391(a ), the removal statute, 28 U.S.C. § 1441(a), controls in removed actions. Section 1441(a) expressly provides for venue in "the district court of the United States for the district and division embracing the place where such action is pending." Measured under the appropriate statute, therefore, venue is proper, and defendants' motions to dismiss for improper venue should be denied.

Finally, defendants' motion to transfer to the Eastern District of California should be denied because they have failed to meet their heavy burden of demonstrating that Taberna's chosen forum should be disregarded.

## FACTS

In 2007, Sidney Dunmore and Kane caused DHI to default on a $20 million note beneficially owned by Taberna and unlawfully transfer its assets to an entity they formed in New York, Dunmore Homes, Inc. ("Dunmore NY"), in a scheme to avoid paying the $20 million. Kane became the owner of Dunmore NY, and Sidney Dunmore was retained as a so-called "consultant." (Mandell Decl. ¶¶ 2-4). They sold DHI's $250 million in assets to Dunmore NY for $500. (*Id.* ¶ 6 & Ex. C) They then filed a Chapter 11 petition for Dunmore NY in New York, in the United States Bankruptcy Court for the Southern District of New York. *In re Dunmore Homes, Inc*., Case No. 07-13533 (MG).

Taberna is the beneficial owner of a $20 million Note (the "Note") issued by DHI and the Indenture (the "Indenture") governing it. (Mandell Decl. ¶ 7)[1] Taberna commenced this action in the Supreme Court of New York, County of New York, against DHI for breach of the Indenture, and against Sidney Dunmore and Kane for tortious interference, breach of fiduciary duty, fraudulent conveyance, alter-ego liability, and unjust enrichment – arising out of their scheme to deprive Taberna of the $20 million owing by DHI. (*Id.* ¶ 8)

Sidney Dunmore and Kane removed the action to this Court by Notice of Removal dated February 21, 2008. (*Id.* ¶ 9) At page 4 of the Notice of Removal, Sidney Dunmore signed a consent on behalf of DHI.

The Indenture contains the following forum selection clause:

SECTION 1.12. Submission to Jurisdiction.

Any legal action or proceeding by or against any party hereto **or with respect to** or arising out of this Indenture may be brought in or removed to the courts of the State of New York, in *and* for the County of New York, or of the United States of America for the **Southern District of New York** (in each case sitting in the Borough of Manhattan). By execution and delivery of this Indenture, **each party accepts, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts** (and courts of appeals therefrom) for legal proceedings arising out of or in connection with this Indenture.

(*Id.* ¶ 10 & Ex. H) (emphasis added).

Sidney Dunmore and Kane caused DHI to transfer its assets to Dunmore NY at a time when DHI was experiencing Events of Default outlined in Section 5.1 of the Indenture—which transfer violated Section 8.1(b) of the Indenture. This transfer apparently was done to facilitate Sidney Dunmore's receipt, personally, of a multi-million dollar income tax benefit. (Mandell Decl. ¶ 11) Documentary evidence produced in response to plaintiffs jurisdictional document requests (*id.*, ¶ 5 & Ex. B) suggests that Sidney Dunmore, through Dunmore Investments, LLC--another one of his corporate entities—paid Kane $250,000 for Kane's participation. (*Id.* ¶ 12 & Ex. E)

Documentary evidence shows that Sidney Dunmore and Kane deliberately chose New York as the state of incorporation for their fraudulent transferee – specifically to avail themselves of what they perceived to be the advantage of a New York venue to perpetrate their fraud. In an email dated August 20, 2007, Sidney Dunmore wrote to Kane that "our Southern Cal. Attorneys are putting together a **New York C corp.** to use instead of Delaware they seem to **like that**

---

[1]    The Note and the Indenture were issued to JP Morgan Chase, as Trustee, and were subsequently transferred to The Bank of New York, as Trustee.

**venue better**." (*Id.* ¶ 13 & Ex. D) (emphasis added)  This was merely 10 days prior to their creation of the transferee corporation, Dunmore NY.  (*Id.* ¶ 13 & Ex. I)

When California trade creditors moved to transfer the bankruptcy proceeding to California, Sidney Dunmore and Kane caused Dunmore NY to oppose and argue that New York was the most convenient venue.  (*Id.* ¶ 14 & Ex. J)  On Taberna's behalf, The Bank of New York, as Trustee under the Indenture, also opposed transfer and argued that New York was the most convenient forum.  (*Id.* ¶ 15 & Ex. K)  The bankruptcy court ultimately transferred the case, finding that California was the more convenient forum for the majority of Dunmore NY's trade creditors – none of whom are parties or witnesses in the case at bar.  *(Id.* ¶ 16)

Taberna is headquartered at 450 Park Avenue, New York, New York.  *(Id.* ¶ 17)  The Trustee of the Indenture, The Bank of New York, also is headquartered in Manhattan, at One Wall Street.  *(Id.* ¶ 18)  The Indenture and the Note were issued under New York law.  *(Id.* ¶ 19)

## ARGUMENT

### I.    DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION SHOULD BE DENIED

#### A.    Burden of Proof

If, as it appears, this motion is proceeding solely upon the papers, Taberna need only make a prima facie showing of personal jurisdiction to defeat defendants' motion.  *Druck Corp. v. Macro Fund*, 102 Fed. Appx. 192, 2004 WL 1367926 (2d Cir. June 17, 2004).  As explained by the Second Circuit:

> Where, as here, a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, **the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction** over the defendant through its own affidavits and supporting materials.

*Id.* at 194, 2004 WL 1367926 at *2 (emphasis added; internal citation and quotation marks omitted).

Moreover, on a motion to dismiss for lack of personal jurisdiction, courts "must construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in its favor." *Id.* As shown below, Taberna has made more than a prima facie showing of personal jurisdiction in the case at bar.

> **B.** **Sidney Dunmore and Kane Concocted and Effectuated the Scheme to Form a Fraudulent Transferee in New York and Transfer $250,000,000 to the New York Corporation**

Taberna has made a prima facie showing that Sidney Dunmore and Kane are subject to New York jurisdiction – because both individuals concocted and effectuated the scheme to form a fraudulent transferee corporation, Dunmore NY, in New York, to transfer $250 million to the New York corporation, and to use the bankruptcy court in New York to protect their transaction. The $250 million transfer occurred only 10 days after Dunmore NY was formed. (Mandell Decl. Exs. C, I) Ten days is obviously insufficient time to engender and consummate such a transaction – naturally, there must have been numerous conversations and agreements between the two individuals, as individuals, prior to formation of the corporation.

Even the meager documents[2] produced by Sidney Dunmore and Kane in response to Taberna's jurisdictional document requests bear out the obvious fact that the individuals communicated about the transaction prior to formation of the corporation. For example, emails show that they were communicating about an "LOI" (*i.e.*, Letter of Intent) as early as August 17,

---

[2]      In response to Taberna's jurisdictional document requests (Mandell Decl. Ex. B), Sidney Dunmore produced a total of 116 pages concerning the $250 million transaction. Approximately half of Kane's 413-page production consists of duplicate and triplicate copies of the same documents. He did not produce any emails. Most of the documents produced by Kane do not bear signatures. Dunmore inexplicably failed to produce many of the documents produced by Kane.

2008 – two weeks prior to their formation of the transferee corporation. (Mandell Decl. Ex. D) They signed the emails as "Sid" and "Mike" – individuals, not corporate officers.[3] And Sidney Dunmore prepared a Confidentiality Agreement dated August 27, 2007 – also prior to formation of the corporation – that they also signed as individuals. (Mandell Decl. Ex. F) In addition, the Confidentiality Agreement references another agreement they call the "Individual Agreement." (*Id.*) While neither individual produced a signed copy of the "Individual Agreement," Kane produced an unsigned version of this document (Mandell Decl. Ex. G), which obviously constitutes another agreement between Sidney Dunmore and Kane, as individuals, prior to their formation of the transferee corporation.

Moreover, Sidney Dunmore's protestations that he had nothing to do with the New York corporation are belied by his own email to Kane. On August 20, 2007 – 10 days prior to the formation of Dunmore NY – Sidney Dunmore wrote Kane that "**our** Southern Cal. Attorneys are putting together a **New York C corp.** to use instead of Delaware they seem to **like that venue better**." (Mandell Decl. Ex. D) (emphasis added). Thus, not only was he a participant in the forum shopping, but he was evidently the principal decisionmaker. He also stayed to be part of senior management as a so-called "consultant" to the New York corporation. (Mandell Decl. Ex. A ¶ 70 & sched. 9)

More importantly, Sidney Dunmore apparently *paid* Kane to be a part of this scheme. An unsigned document produced by Kane—but not by Sidney Dunmore—sets forth an agreement

---

[3]    Kane sometimes signed emails as "Michael Kane, Senior Loan Officer." (Mandell Decl. Ex. D) According to an Affidavit filed in Dunmore NY's bankruptcy proceeding, Kane was a "Senior Loan Officer" with "Comstock Mortgage" (Mandell Decl. Ex. A sched. 9) – which had no relationship to the fraudulent transfer transaction but was merely Kane's place of employment.

whereby Sidney Dunmore, through his corporate vehicle Dunmore Investments, LLC, would pay

Kane $250,000 for his participation.  (Mandell Decl. Ex. E)

### C.      All Claims Arise out of Defendants' Transaction of Business in New York

New York Civil Practice Law and Rules ("CPLR") 302(a)(1) provides for "personal

jurisdiction over any non-domiciliary … who in person <u>or through an agent</u>:  1. transacts any

business within the state…."   CPLR 302(a)(1) (emphasis added).   "If the defendant has

'transacted business' in New York, it is suable on any cause of action that arises out of the

transaction."  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

As held by the United States Supreme Court:   "So long as it creates a 'substantial

connection' with the forum, **even a single act can support jurisdiction**.  *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis added).  "A nondomiciliary transacts business

under [CPLR] 302(a)(1) when he purposefully avails [himself] of the privilege of conducting

activities within [New York], thus invoking the benefits and protections of its laws."  *CutCo*

*Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal citations and quotation

marks omitted). "**[E]ven a single New York business transaction may be sufficient**, provided

the cause of action arises "out of the subject matter of the [transaction]."  *Viacom Int'l, Inc. v.*

*Melvin Simon Prods*., 774 F. Supp. 858, 862 (S.D.N.Y. 1991) (emphasis added).

Here, Sidney Dunmore and Kane transacted substantial business within the State of New

York (through an agent if not in person) when they created a New York corporation as the

transferee in the underlying fraudulent transaction, and transferred $250 million to the New York

corporation, with the goal of using the bankruptcy court in New York to shield their transaction.

Kane admits that he transacted business in New York but incorrectly labels his contact as

"random," "attenuated" and "fortuitous."    (Kane Br. 7)   None of these adjectives applies.

Similarly, Sidney Dunmore denies any involvement with New York, but his emails demonstrate

that the truth is otherwise – he purposely chose New York as the situs of the fraud. (Mandell Decl. Ex. D)

Both individuals plainly intended to bankrupt Dunmore NY following the asset transfer, and they apparently chose New York to protect their transaction because the bankruptcy judges here have a "debtor-friendly" reputation. Such a calculated decision to utilize the Department of State of the State of New York and the United States Bankruptcy Court located in New York to effectuate their scheme hardly constitutes an attenuated or fortuitous link with New York. Rather, the individual defendants "purposefully availed [themselves] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus.*, 806 F.2d at 365.

All the claims against Sidney Dunmore and Kane—tortious interference, breach of fiduciary duty, fraudulent conveyance, alter-ego liability, and unjust enrichment—arise out of their use of the New York State Department of State to form the transferee corporation, their transfer of $250 million to the New York corporation, and their use of the bankruptcy court located in New York to protect their transaction. Accordingly, they plainly transacted business in New York in connection with the claims against them in this action, and this Court therefore has personal jurisdiction over them.

Kane argues that the assertion of jurisdiction over him would offend traditional notions of fair play since Dunmore NY—the company he owns—is beyond the subpoena powers of this Court. (Kane Br. 10) Yet it is obvious that as president and sole shareholder of Dunmore NY, Kane has access to his own company's records without the issuance of a subpoena.[4] Similarly,

---

[4]    Kane makes a similar argument regarding DHI, apparently forgetting that DHI is a party to this action and that he has the right of direct discovery against DHI and its principal, Sidney Dunmore.

the alleged increased cost and burden of conducting a trial in New York versus in Sacramento hardly offends traditional notions of fair play – particularly since defendants chose New York as the situs of their fraudulent transfer.

Since these two individuals availed themselves of the benefits of New York State's Department of State and the United States Bankruptcy Court in New York in a manner central to their fraudulent scheme, it would be both fair and just to hold them accountable before a jury in New York.

### D.    As Sidney Dunmore's Alter Ego, DHI Bound Him to New York Jurisdiction

The complaint alleges that Sidney Dunmore and DHI are alter egos.  Complaint ¶ 34.  In allowing DHI to default in this action, he caused DHI to admit the alter ego claim in the complaint.

Specifically, DHI has admitted the allegations in the complaint that Sidney Dunmore was the sole owner of DHI and its alter ego; that he has exercised complete domination and control of DHI for his personal gain and to the detriment of Taberna with respect to the Indenture, the breaches of the Indenture, and the transfer of all of DHI's assets in violation of the Indenture; and that he used his domination and control of DHI to cause it to breach the Indenture, and to wrongfully hinder and delay Taberna's rights as a creditor.  Complaint ¶¶ 34-35.[5]

Sidney Dunmore caused his alter ego to transfer all its assets—directly violating the Indenture—in exchange for $500 so that Dunmore could personally obtain a multi-million income tax benefit.  (Mandell Decl. Ex. A ¶ 30; Ex. C).  He also apparently induced Kane to

---

[5]    The complaint states the elements of an alter ego claim under New York law – *viz.*: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud 'or other wrong'; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff."  *In re Adler, Coleman Cleaning Corp.*, 469 F.Supp.2d 112, 117 (S.D.N.Y. 2007) (quoting *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003)).

participate in this scheme by funneling $250,000 to Kane through another Dunmore-entity, Dunmore Investments, LLC. (Mandell Decl. Ex. E) Although Sidney Dunmore attempts to argue that such conduct was not specifically listed as an alter ego factor in *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991),[6] the Second Circuit observed in that case that there could be an "infinite variety of situations that might warrant disregarding the corporate form," and that "disregarding corporate separateness is a remedy that differs with the circumstances of each case." *Id.* (citation omitted).

The defendants' gamesmanship with corporate assets in the case at bar in direct contravention of plaintiff's rights – particularly in light of the personal tax benefit for Sidney Dunmore individually – shows prima facie that DHI and Sidney Dunmore were alter egos. As such, Sidney Dunmore is bound by DHI's consent to New York jurisdiction in the Indenture. *See Packer v. TDI Systems, Inc.*, 959 F.Supp. 192, 202-03 (S.D.N.Y. 1997); *U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.*, No. 98 Civ. 3099, 1999 WL 307642, at *12 (S.D.N.Y. May 17, 1999). In *Packer*, the court found that plaintiff made a prima facie showing of alter ego liability and noted that blanket denials submitted in affidavits or pleadings did not impact such a showing. *Id.* The court found personal jurisdiction over the individual based upon the prima facie showing of alter ego liability together with the corporation's contractual submission to jurisdiction in New York. *Id.*

---

[6]    (Dunmore Br. 8 n.19)

Since DHI has admitted that DHI and Sidney Dunmore are alter egos, and Taberna has made a prima facie showing that they are alter egos, DHI's consent to jurisdiction in the Indenture binds Sidney Dunmore to personal jurisdiction in New York as well.[7]

* * *

In sum, Taberna has exceeded its burden on this motion of making a prima facie showing that Sidney Dunmore and Kane are subject to New York jurisdiction. Accordingly, the motions to dismiss for lack of personal jurisdiction should be denied.

## II.   DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE SHOULD BE DENIED

Both Sidney Dunmore and Kane erroneously rely on 28 U.S.C. § 1391(a) for their contention that venue is improper in this District.[8] Although venue in diversity cases is generally governed by 28 U.S.C. § 1391(a), the removal statute, 28 U.S.C. § 1441(a), determines the proper venue in this removed case. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998) ("the removal statute, and not the ordinary federal venue statute, 28 U.S.C. § 1391, governs venue in removed cases") (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953)).

"[T]he removal statute provides that venue is proper in 'the district court of the United States for the district and division embracing the place where such action is pending.' 28 U.S.C. § 1441(a)." *PT United*, 138 F.3d at 72. Simply stated, venue is proper in this District because

---

[7]     Sidney Dunmore describes the Indenture's jurisdictional clause as an "alleged potential consent to jurisdiction." (Dunmore Br. 8 n.19) The qualifiers "alleged" and "potential" are in error, as the language in the clause is plain and unambiguous.

[8]     Like the fraternity brothers in the movie "Animal House" who cheated off the same "cheat-sheet" and all got the exact same wrong answers, Sidney Dunmore and Kane

the action was removed from the state court in this District.  *Palace Exploration Co. v. Petroleum Development Co.*, 41 F.Supp.2d 427, 437 (S.D.N.Y. 1998) (denying motion to dismiss).

Accordingly, defendants' motion to dismiss for improper venue must be denied.

### III.    TRANSFER IS NOT WARRANTED

Defendants' motions to transfer this case to California should also be denied because they fail to meet their heavy burden to demonstrate that transfer is warranted.  It is well-settled that the moving party bears the burden of establishing that a plaintiff's choice of forum is inappropriate.  *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979).  Specifically, defendants must convincingly establish that transfer is warranted by the convenience of parties and witnesses and the interests of justice.  *Beatie & Osborne LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 394 (S.D.N.Y. 2006) (moving party must make "a clear-cut showing that transfer is in the best interests of the litigation") (citation omitted).

As demonstrated below, defendants have failed to show that the relevant factors favor transfer.

### A.    Taberna's Choice of Forum Should Be Honored

Taberna's headquarters are at 450 Park Avenue in Manhattan.  Taberna was the party wronged – therefore, its choice of forum is "entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer."  *Beatie & Osborn*, 431

---

copied verbatim each other's misguided reliance on 28 U.S.C. § 1391(a).  (Dunmore Br. 15-16; Kane Br. 12-13)

F.Supp.2d at 395; *Orix Credit Alliance v. Brown*, No. 93 Civ. 1019, 1994 WL 392240, at * 6-7 (S.D.N.Y. Jul. 27, 1994) (plaintiff's choice of forum is entitled to "substantial weight").

Defendants' reliance on *Karvelis v. Constellation Lines S.A.*, 608 F.Supp. 966, 971 (S.D.N.Y. 1985) for the proposition that Taberna's choice of forum is "negated" by New York's alleged absence of interest is misplaced.[9] *Karvelis* merely holds that the "strong presumption" in favor of a plaintiff's choice of forum applies with "less force" but confirms that "the *burden remains on defendants*" to demonstrate why transfer is warranted. *Id.* at 971 (emphasis added) (denying motion to dismiss on forum non conveniens grounds).

Further weight is afforded to Taberna's choice of forum where, as here, the operative document contains a forum selection clause. Section 1.12 of the Indenture provides: "[a]ny legal action or proceeding by or against any party hereto or with respect to or arising out of this indenture may be brought in or removed to … the Southern District of New York" (Mandell Decl. Ex. H). *See PowerDsine, Inc. v. Broadcom Corp.*, 07-CV-2490, 2008 WL 268808, at * 8 (E.D.N.Y. Jan. 29, 2008) (presence of forum selection clause "weighs[s] heavily in favor of plaintiff's favor").

The Indenture's forum selection clause demonstrates that defendants were aware of the fact that litigation arising out of the Indenture would be brought in New York. Moreover, as discussed above, since Taberna has made a prima facie showing that DHI is the alter ego of Sidney Dunmore, he is subject to this clause individually. The Indenture's forum selection clause weighs in favor of retaining jurisdiction in New York. *Weiss v. Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y. 1992) (requiring moving party to

---

[9]        (Kane Br. 6). *See also* Dunmore Br. 19-20.

demonstrate "exceptional facts" explaining why it should be relieved of its contractual consent to forum).

## B.    The Convenience of the Witnesses Favors New York

In order to demonstrate that the convenience of the witnesses favors transfer, defendants must "clearly specify the key witnesses to be called and … make a general statement of what their testimony will cover." *Factors Etc.*, 579 F.2d at 218.  Yet, here, defendants merely assert the unsupported conclusion that "the location of any prospective witnesses and documents are all in California."[10]  They utterly fail to (1) identify who the purported witnesses are; (2) specify what their testimony would be; and (3) explain why it would be inconvenient for these witnesses to travel to New York.

Because the employees of Taberna – and more importantly, the employees of nonparty The Bank of New York, as Trustee under the Indenture – are headquartered in New York, the convenience of witnesses favors New York.  *See Orix Credit*, 1994 WL 392240, at *7.

## C.    The Convenience of Parties Favors New York

With Taberna in New York, and Sidney Dunmore and Kane in California, the convenience of the parties is split evenly; therefore, defendants have not carried their burden. *Wechsler v. Macke Int'l Trade, Inc.*, No. 99 Civ. 5725, 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999) ("The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party"); *S-Fer Intern., Inc. v. Paladion Partners, Ltd.*, 906 F.Supp.2d 211, 215 (S.D.N.Y. 1995) ("zero-sum exchange of burdens does not favor a transfer"); *Dwyer v. Gen. Motors Corp.*, 853 F.Supp. 690, 693

---

[10]    (Dunmore Aff. ¶ 10; Kane Dec. ¶¶ 6-7).  *See also* Kane Br. 18; Dunmore Br. 21 (alleging, with no specificity, that defendants' ability to bring witnesses to trial will be hampered by excessive costs).

(S.D.N.Y. 1994) ("transfer should not merely shift the burden of inconvenience from one party to another").

### D.    The Location of Documents Does Not Favor Transfer

Defendants' conclusory, unsupported contention that they "will be forced to incur significant expense for document production" fails to satisfy their burden as to this factor.[11] *Beatie & Osborn*, 431 F.Supp.2d at 397 (moving party must establish the location and importance of the documents in question). Where, as here, the moving party fails to provide information establishing the location and importance of the documents in question, "the Court cannot find that this factor weighs in favor of transfer." *Id.* In any event, this factor was generally viewed as obsolete—at least with regard to documentary evidence—during the "era of photocopying, fax machines and Federal Express," *Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y. 1977), let alone the modern era of broadband, email, DVDs, and PDFs. *Am. S.S. Owners Mut. Prot. & Indem. Ass'n. v. Lafarge North Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y.2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents").

### E.    The Locus of Operative Facts Favors New York

Defendants fail to show that this factor favors transfer. The Note and the Indenture were issued under New York law, with a New York forum and jurisdiction clause. Sidney Dunmore and Kane sought to defeat Taberna's rights under the Indenture by forming a corporation in New York and transferring $250 million to the New York corporation. They could have formed the transferee corporation in California – but they did not; they chose New York. Even with the New York transferee, they could have filed their bankruptcy petition in California – but they did

---

[11]       (Kane Br. 17; Dunmore Br. 20)

not; they chose New York.  Even after they filed for bankruptcy in New York, they could have consented to the motion to transfer the bankruptcy case to California venue – but they did not; they chose New York.  They fail to identify a single relevant event that occurred in California.[12] Accordingly, this factor does not favor transfer.

### F.    The Availability of Compulsory Process Does Not Favor Transfer

Defendants fail to show that this factor favors transfer.  Even if they had not failed to meet their burden of specifying the witnesses whom they need to subpoena, the availability of compulsory process is a neutral factor in light of defendants' ability to issue subpoenas out of any district court and take any nonparty's deposition by videotape, and then present the video at trial.  *Dealtime.com v. McNulty*, 123 F.Supp.2d 750, 757 (S.D.N.Y. 2000); *Beatie & Osborn*, 431 F.Supp.2d at 396 (noting that court would not afford this factor much weight where defendants fail to specify witnesses).  Accordingly, this factor does not favor transfer.

### G.    The Interests of Justice Favor New York

Defendants' moving papers fail to furnish any reason why transferring this case to California would further trial efficiency and the interests of justice.  Defendants' conclusory contention that transferring this action "comports with the interest of justice"[13] fails to satisfy their burden under § 1404(a).  *See Beatie & Osborn*, 431 F.Supp.2d at 397 (this factor does not weigh in favor of transfer where moving party "has supplied the Court with no reasons why transfer would further trial efficiency and the interests of justice").

---

[12]    (Kane Br. 3-4; Dunmore Br. 4-5)

[13]    (Kane Br. 18; Dunmore Br. 21)

### H.     Alleged Related Litigation in California Does Not Favor Transfer

While defendants are correct that "transfer is particularly appropriate where there is a pending lawsuit in the transferred district involving the same facts, transactions, or occurrences,"[14] they do not identify any such pending lawsuit in California. *See Pall Corp. v. PTI Technologies, Inc.*, 992 F.Supp. 196, 202 (E.D.N.Y. 1998). Their argument – with no record support – that the Dunmore NY bankruptcy involves "some if not all of the same parties, certain shared facts and documents, as well as witnesses"[15] is wholly insufficient to warrant transfer. They fail to enumerate which facts, documents and witnesses they contend are "shared." *Id.* ("Significantly, [the moving party] has not submitted any affidavit in support of its contentions, which rely, in large measure, on factual allegations … Since those 'facts' may not be raised in a Memorandum of Law, they are not properly before the Court and will not be considered").

Defendants' failure to specifically identify the shared facts, transactions or occurrences is not surprising in light of the fact that the corporate Chapter 11 proceeding bears no resemblance to the state law claims against the individuals Sidney Dunmore and Kane in the case at bar. Nor is there any identity of legal issues – the state law claims asserted in this action against the individuals for tortious interference, breach of fiduciary duty, fraudulent conveyance and alter ego simply do not exist in the bankruptcy proceeding.

Simply put, "it cannot be gleaned from the record presently before the Court that the "same facts, transactions or occurrences" are at issue in both cases. *Pall Corp.*, 992 F.Supp. at 202  Accordingly, this factor does not favor transfer.

\* \* \*

---

[14]     (Kane Br. 18; Dunmore Br. 21)

[15]     (Kane Br. 19; Dunmore Br. 21)

In sum, defendants have failed to meet their burden of making "a clear-cut showing that transfer is in the best interests of the litigation." *Beatie & Osborne*, 431 F.Supp.2d at 394. Accordingly, the motions to transfer should be denied.

## CONCLUSION

For all the foregoing reasons, defendants' motions to dismiss and transfer should be denied.

Dated: New York, New York
       March 28, 2008

<div style="margin-left:40%;">

WOLFBLOCK LLP


By: ____/s/ Jill L. Mandell_____
Kenneth G. Roberts (kroberts@wolfblock.com)
Jill L. Mandell (jmandell@wolfblock.com)
250 Park Avenue
New York, New York 10177
(212) 986-1116
Attorneys for Plaintiff

</div>