```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
TABERNA CAPITAL MANAGEMENT, LLC,        :
                                        :
               Plaintiff,               :     08 Civ. 1817 (JSR)
                                        :
          -v-                           :     MEMORANDUM
                                        :
SIDNEY B. DUNMORE, MICHAEL A. KANE,     :
and DHI DEVELOPMENT f/k/a DUNMORE       :
HOMES, LLC,                             :
                                        :
               Defendants.              :
---------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

By Order dated April 11, 2008, the Court denied defendants' motions 1) to dismiss for lack of personal jurisdiction, 2) to dismiss or transfer for improper venue, or 3) to transfer venue in the interests of justice. This Memorandum states the reasons for those rulings.

Plaintiff Taberna Capital Management ("Taberna") is headquartered in Manhattan. Declaration of Jill L. Mandell in Opposition to Defendants' Motions to Dismiss or Transfer ("Mandell Declaration") ¶ 17. Defendant DHI Development, f/k/a Dunmore Homes, LLC, ("DHI") issued a note worth approximately $20 million pursuant to an indenture agreement. Complaint ¶ 6. Taberna is the beneficial owner of the note. Mandell Declaration ¶ 7. At some time prior to September 10, 2007 DHI defaulted on the indenture and subsequently defaulted on interest payments owed pursuant to the terms of the note. Complaint ¶¶ 7, 9. Individual defendant Sidney B. Dunmore is the president of DHI. Affirmation of Sidney B. Dunmore in Support of His Motion ("Dunmore Affirmation") ¶ 2. Individual defendant Michael

A. Kane is the sole shareholder of, and an officer of, Dunmore Homes, Inc., a New York corporation ("Dunmore NY"). Declaration of Michael A. Kane in Support of Motion ("Kane Declaration") ¶ 6. Dunmore NY was incorporated in August 2007 at the direction of Dunmore and Kane. Kane Declaration ¶ 4; Mandell Declaration Exh. D; id. Exh. F at SD 73 (agreement between Kane and DHI, including provision that Kane would "form" Dunmore NY). Defendant DHI's assets and liabilities were sold to Dunmore NY in September 2007 for $500. Dunmore Affirmation ¶ 8. Dunmore agreed to pay Kane, who appears to have no independent connection to DHI, $250,000 for his participation in the transfer of assets and liabilities from DHI to Dunmore NY. Mandell Declaration Exh. E. ¶ 1. DHI is a California limited liability company headquartered in that state, Dunmore Affirmation ¶ 2, and Dunmore and Kane both reside in California. Id. ¶ 4; Kane Declaration ¶ 1.

Based on these underlying facts, Taberna alleges in its complaint that Dunmore and Kane created Dunmore NY and transferred DHI's assets to Dunmore NY as part of a fraudulent scheme intended to defeat Taberna's rights under the indenture and note and to enrich Dunmore personally by allowing him to realize a personal tax benefit of over $11 million. E.g., Complaint ¶¶ 17, 25. Taberna's complaint, originally filed in New York state court, contains counts of tortious interference and fraudulent conveyance against Dunmore and Kane and breach of fiduciary duty and alter ego liability against

Dunmore.[1]  After removing the complaint to this Court, defendants Dunmore and Kane filed the instant motion.

The New York long arm statute provides, in relevant part, that a person is subject to jurisdiction in New York if he: "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. CPLR § 302(a)(1).  This is a "single act statute [and] ... proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 850 N.E.2d 1140, 1142 (N.Y. 2006) (quoting Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988)).  It applies equally to both "tort and contract claims arising from a defendant's transaction of business in [New York]."  Kreutter, 522 N.E.2d at 43.

Before discovery has occurred, a plaintiff who is responding to a personal jurisdiction challenge need only make a prima facie showing of such jurisdiction.  However, once discovery has occurred "the plaintiff's prima facie showing ... must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant."  Bank Brussels

---

[1] The complaint also contains a count of breach of the indenture against defendant DHI, but DHI filed for bankruptcy protection on April 8, 2008.  See Notice of Pendency of Chapter 7 Case, Apr. 8, 2008.  Accordingly, the case as to DHI is automatically stayed.

3

Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here, there has been jurisdictional discovery, the plaintiff must proffer actual evidence on the jurisdictional issue. However, because no discovery on the merits of the case has taken place, the plaintiff here need only make a prima facie showing as to the alleged fraud.

Plaintiff has presented sufficient jurisdictional evidence and adequate allegations of fraud to satisfy the New York long arm statute. As to the fraud, plaintiff alleges that the two individual defendants, working together, concocted a fraud, and that the primary means of carrying out that fraud was the creation of a New York corporation that would act as a type of front for the fraud. Kane, who had no independent reason to be involved in the scheme, would become the sole shareholder of the New York corporation. Dunmore, who stood to reap the benefit of the scheme, would cause the corporation he controlled, DHI Development, to fraudulently transfer its assets and liabilities to the newly-formed New York corporation.

As to the jurisdictional evidence, plaintiff has proffered, among other things, an email written by Dunmore to Kane on August 20, 2007, which states that "our Southern Cal. Attorneys are putting together a New York C corp. to use instead of Delaware[;] they seem to like that venue better." Mandell Declaration Exh. D. This email makes explicit that the defendants and their agents purposely chose New York as the forum in which to incorporate the corporation that would serve as the foundation for their alleged fraud, and did so in order to receive the benefit of New York's laws as they carried out

4

the scheme. This evidence shows that the defendants' contact with New York was not random or fortuitous, as defendants argue, but was deliberate and purposeful. <u>See also</u> Mandell Declaration Exh. F at SD 73 (agreement between Kane and DHI in which Kane agrees to "form" Dunmore NY).

These jurisdictional facts and the accompanying allegations concerning the fraud are sufficient to show that the individual defendants were transacting business in New York by creating a corporation in New York. Creating a New York corporation is sufficient transaction of business in New York for purposes of the New York long arm statute where, as here, it is purposefully done to carry out an alleged fraud and it is substantially related to, indeed foundational to, the alleged fraud that forms the basis of plaintiff's causes of action.

In addition to meeting the test of the New York long arm statute, a plaintiff must also show that a defendant's contacts with the forum comport with due process. To satisfy due process, plaintiff must first show that the defendant has "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice," which may include consideration of whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292, 297 (1980) (internal quotation marks omitted). Additionally, plaintiff must show that the forum selection is reasonable, an analysis which requires an

5

assessment of "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

In this case, there can be no question that Dunmore and Kane deliberately directed their activities toward New York in such a way that they should have "reasonably anticipate[d] being haled into court [here]." World-Wide Volkswagen Corp., 444 U.S. at 297. That Dunmore and Kane are required to litigate in the state that they targeted as the proper forum in which to create a corporation, the key to their allegedly fraudulent scheme, does not "offend traditional notions of fair play and substantial justice." Id. at 292. Turning to the reasonableness of the forum, while litigating here may be somewhat burdensome for the defendants, New York has a strong interest in ensuring that its laws, in this case its corporate laws, are not abused for fraudulent purposes. Further, the forum is clearly convenient for the plaintiff, which has a principal place of business in New York. Finally, exercising jurisdiction over the defendants in this Court is more efficient than requiring plaintiff to begin its lawsuit anew in another forum. In short, the Due Process Clause is not offended by the exercise of personal jurisdiction over Dunmore and Kane in New York on these facts, and

accordingly the Court, in its Order of April 11, 2008, denied defendants' motion to dismiss for lack of personal jurisdiction.

Turning to defendants' second motion, to dismiss or transfer for improper venue, that motion was denied for the reasons stated from the bench. See transcript, 4/10/08.

Finally, defendants' third motion was to transfer venue in the interests of justice. In deciding such a motion, courts commonly consider factors such as: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. See, e.g., D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). The plaintiff's choice of forum is entitled to substantial weight, especially here where plaintiff has a principal place of business in this District. Although both defendants claim that virtually all relevant witnesses are located in California, neither defendant "clearly specif[ies] the key witnesses to be called" or indeed offers the name or other identifying information of even a single potential witness. See Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). Accordingly, that factor cannot weigh in favor of transfer. Similarly, to the extent that the location of documents and other evidence still has any relevance in this era of digital communications, defendants have listed no specific documentary or other evidence that is located in California. None of the remaining

factors weighs heavily, if at all, in favor of transfer. Further, the strong interest in preserving scarce judicial resources clearly weighs against transfer, since the parties in this action have already agreed to a discovery schedule and post-discovery motion schedule in this court, discovery has commenced, and the Court has set an extended, but firm, ready-for-trial date. Weighing all of these factors, the Court finds that defendants have not met their burden of showing that the case should be transferred in the interests of justice, and, accordingly, by Order dated April 11, 2008, defendants' third motion was also denied.

                                                      JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       May 16, 2008